UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: : ) | |
| ) | |
| LOMBARDO'S RAVIOLI KITCHEN, INC.   ) | CASE NO.  08-20774 (ASD) |
| ) | |
| DEBTOR   ) | CHAPTER 7 |
| ) | |
| FRANK LAGALIA   ) | |
| ) | |
| PLAINTIFF   ) | |
| ) | |
| v.   ) | ADV. PRO. NO.  08-2057 |
| ) | |
| PEOPLE'S UNITED BANK and   ) | |
| LOMBARDO'S RAVIOLI KITCHEN, INC.   ) | RE: DOC. I.D. NO. 1 |
| ) | |
| DEFENDANTS   ) | |

APPEARANCES:

Douglas S. Skalka, Esq., Nancy B. Kinsella, Esq., and Jarod F. Proto, Esq.
Neubert Pepe & Monteith, P.C.
195 Church Street, 13th Floor, New Haven, CT 06510
Counsel for Plaintiff

Michael S. Wrona, Esq.
Halloran & Sage LLP
One Goodwin Square, 225 Asylum Street, Hartford, CT 06103
Counsel for Defendant People's United Bank

Denise R. Polivy, Esq.
Baker, O'Sullivan and Bliss, PC
Putnam Park, Suite 100, 100 Great Meadow Road
Wethersfield, CT 06109
Counsel for Defendant-Debtor Lombardo's Ravioli Kitchen, Inc.

**MEMORANDUM OF DECISION
ON COMPLAINT TO DETERMINE PRIORITY OF LIENS**

DABROWSKI, ALBERT S., Chief United States Bankruptcy Judge

## I.  INTRODUCTION

On May 1, 2008, Lombardo's Ravioli Kitchen, Inc. (hereafter, the "Debtor"), a closely-held Connecticut corporation engaged in the manufacture and sale of ravioli products, commenced the instant bankruptcy case by filing a bankruptcy petition under Chapter 11 of the Bankruptcy Code. The Chapter 11 case was converted to Chapter 7 on May 11, 2009.  The captioned adversary proceeding, commenced on October 7, 2008, concerns a priority dispute between two secured creditors, plaintiff Frank LaGalia (hereafter, "LaGalia") and defendant People's United Bank (hereafter, "People's"), each with perfected security interests in certain of the Debtor's assets.

LaGalia and People's (together, "the Parties"),requested that, in lieu of holding a hearing, the Court consider the matter "on the papers."  The Parties, on April 15, 2009, jointly filed a stipulation of facts and numerous documentary exhibits, including copies of the relevant notes and security agreements (and amendments and restatements thereof), financing statements (and amendments thereto) filed with the Connecticut Secretary of State's Office, and a subordination agreement.  LaGalia and People's filed memoranda of law in support of their respective positions and responses thereto.  Upon considering the undisputed facts and arguments of the Parties, and as explained hereafter, the Court concludes that People's security interest in the Debtor's assets enjoys priority over that of LaGalia.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(K).

### III. FACTUAL BACKGROUND

As noted the relevant facts are undisputed. See Undisputed Facts Regarding Frank LaGalia's Adversary Proceeding to Determine Priority (hereafter, the "Stipulation"), Doc. I.D. No. 21. At the heart of the dispute and attached to the Stipulation are a series of documents, all executed at a closing on July 20, 2006, by the Debtor, People's, and Chef Gusto, LLC ("Chef Gusto").

- People's granted the Debtor a line of credit with a $250,000 maximum (the "Line of Credit"); in consideration therefor, the Debtor signed a $250,000 note (the "Line of Credit Note") and a security agreement (the "LOC Security Agreement") giving People's a security interest in the Debtor's existing and after-acquired assets. (Stipulation ¶ 5.)

- People's made two additional term loans to the Debtor in the amounts of $1,436,000 and $289,000. In consideration therefor, the Debtor signed notes (together the "Term Notes") for such amounts and a security agreement (the "Bank Security Agreement") giving People's a security interest in the Debtor's existing and after-acquired assets. (Stipulation ¶ 6.)

- The Debtor purchased substantially all the assets of Chef Gusto. In partial consideration of the purchase, the Debtor that day executed and delivered to Chef Gusto a $700,000 term note (the "Gusto Note") and a security agreement (the "Gusto Security Agreement") giving Chef Gusto a security interest in the debtor's furniture, fixtures and equipment. (Stipulation ¶ 11.)

- Chef Gusto also executed and delivered to People's a subordination agreement (the "Subordination Agreement"). (Stipulation ¶ 13.)

People's filed its original financing statement, its UCC-1, on July 17, 2006, several days prior to the closing, and an amendment thereto on July 20, 2006. (Exh. U.)[1] Chef Gusto filed its original financing statement on July 24, 2006. (Exh. M.) Chef Gusto subsequently assigned to LaGalia, its manager, all of its rights and interests under the Gusto Note, the Gusto Security Agreement, and the Subordination Agreement; on March 24, 2008, Chef Gusto filed an amendment to its financing statement to reflect the assignment. (Stipulation ¶¶ 14, 15.)

On November 27, 2006, the Debtor and People's executed the Amended and Restated Notes (the "Restated Notes"), modifying the Term Notes. The original Term Notes provided for payments of interest-only for the first four months; the only change made by the Restated Notes was to extend such period for an additional four months. The principal amounts, interest rates, and payment term remained the same as under the original Term Notes.

---

[1] Attached to the Stipulation were numerous documents labeled Exhibits A through O and one document, copies of People's UCC filings, which was not labeled. The Court refers to the unlabeled document as Exhibit U.

4

On July 31, 2007, People's loaned the Debtor an additional $150,000 (the "2007 Loan"). The Debtor signed a note (the "2007 Note") in the amount of $150,000 and an amendment to the LOC Security Agreement to incorporate the terms of the 2007 Loan.

### IV. DISCUSSION

#### A. *Positions of the Parties*

People's advances two arguments in support of its position that its interest in the Debtor's assets is entitled to priority over LaGalia's. First, People's contends that the terms of the Subordination Agreement unambiguously establish the priority of its security interest as to each of the debts at issue. In addition, People's avers that, regardless of the provisions of the Subordination Agreement, its security interest is entitled to priority over LaGalia's based upon the straightforward application of the provisions of Article 9 of the Uniform Commercial Code.

LaGalia contends that People's has priority only as to the $250,000 Line of Credit loan; that neither the Restated Loans nor the 2007 Loan are subordinated pursuant to the Subordination Agreement.

#### B. *The Subordination Agreement*

The Subordination Agreement defines the "Bank Loan" as "a term loan in the principal amount of $1,725,000 and a line of credit loan in the amount of $250,000 . . . pursuant to a Loan and Security Agreement and various other documents dated the date hereof (the 'Loan Documents')." (Exh. N at 1.). In the Subordination Agreement, the parties agree that the Debtor's obligations to Chef Gusto are subordinated to the "Senior Debt," which is defined as follows:

5

> "Senior Debt" means all indebtedness, liabilities, and obligations whatsoever, of every kind and description, whenever and however arising, absolute or contingent, due or to become due, now existing or hereafter arising from, or in any way connected with any direct or indirect indebtedness of Debtor to Bank pursuant to the Loan Documents and all other documents executed and delivered in connection therewith, all of even date herewith, including, without limitation, all principal and interest and any late and default charges due and owing under the Bank Loan, together with all costs, expenses, and attorney's and other professional fees incurred in connection with any action to collect said Bank Loan or to enforce or foreclose any security agreement or other agreement securing said Bank Loan, including, but not limited to, the Loan Documents between Debtor and Bank of even date herewith.

(Exh. N, Subordination Agreement ¶ 1(b).)

Each of the parties, emphasizing different portions of the above-quoted provision, interpret the definition of Senior Debt as "clearly" supporting its position. LaGalia, focusing on "indebtedness . . . pursuant to the Loan Documents . . . of even date herewith," contends that only the Line of Credit Loan is subordinated; that the obligations under the Restated Notes and the 2007 Note are distinct from those under the original Loan Documents and, as such, are not subordinated. People's claims that Senior Debt, defined as "all indebtedness, liabilities, and obligations, . . . whenever and however arising . . . due or to become due, now existing or hereafter arising from, or in any way connected with any direct or indirect indebtedness . . . pursuant to the Loan Documents," includes both the Restated Loans and the 2007 Loan.

The Restated Notes clearly arise out of the original Term Loans. Except for permitting the Debtor to make four additional payments of interest only before starting to amortize the principal, the Restated Notes are identical to the Term Notes. The principal amounts, $1,436,000 and $289,000, are identical; the interest rates remained at prime plus

1.5% (with a default rate of prime plus 5%), and the final payments are due November 20, 2016. The Court finds that the Restated Notes, which reference the same underlying indebtedness as the original Term Notes, are well within the scope of the definition of Senior Debt, as arising out of or connected to the indebtedness pursuant to the July 20, 2006 Loan Documents, and that, under the terms of the Subordination Agreement, such debt has priority over the LaGalia loan.

On the contrary, the 2007 Loan is distinct from both the Term Loans and the Line of Credit. People's advanced an additional $150,000 and the Debtor signed a separate Note therefor. Because the 2007 Note is secured by the same collateral, People's and the Debtor amended the LOC Security Agreement to include specific references to the 2007 Loan and its terms. Whether being secured by the same collateral is sufficient to bring the 2007 Loan within the scope of the Subordination Agreement as a debt arising under or connected to the July 20, 2006 Loan Documents, notwithstanding that the indebtedness thereunder was distinct, is a question the Court need not reach in light of the alternative grounds, set forth hereinafter, for its conclusion that People's has priority as to the 2007 Loan, as well as those incurred in 2006.

*C.    Article 9 Priorities*

Under Article 9 of the Uniform Commercial Code, codified in Connecticut at Conn. Gen. Stat. §42a-9-101 et seq., the relative priority of creditors with perfected security

interests in the same collateral,[2] with limited exceptions not applicable hereto,[3] depends on which creditor was the first to file its original financing statement, its UCC-1. See Conn. Gen. Stat. §42a-9-322(a)(1) ("Conflicting perfected security interests . . . rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest . . . is first perfected, if there is no period thereafter when there is neither filing nor perfection.").

Documents jointly filed by the parties, attached as exhibits to the Stipulation, include copies of their original financing statements (their UCC-1's), and amendments thereto. Those documents clearly indicate that People's filed its original UCC-1 covering the Debtor's assets on July 17, 2006, several days prior to the closing on July 20, 2006. (Exh. U.) Chef Gusto filed its UCC-1 on July 24, 2006, several days after the closing. In accordance with § 9-322(a), a "pure race" statute, People's, as the first to file, has priority as to any security interests it then has, or subsequently obtains, in the collateral. See Conn. Gen. Stat. §42a-9-322 cmt. 4 ex.1.

People's security agreements (both the LOC Security Agreement and the Bank Security Agreement) include after-acquired property clauses and future advances clauses as permitted under Conn. Gen. Stat. §42a-9-204. The future advances clauses of such security agreements, unlike the Senior Debt definition of the Subordination Agreement, are not limited to future advances arising out of the July 20, 2006 loans. The future advances

---

[2] People's security interest is somewhat more extensive than LaGalia's in that it includes an interest in asset categories in addition to the Debtor's furniture, fixtures and equipment; however, People's security interest in such additional asset categories is not at issue in this proceeding.

[3] Neither party claims to have a purchase money security interest in the collateral.

8

clause of the LOC Security Agreement[4] states:

> Obligations Secured.  The grant of the security interest herein by the Debtor to the Secured Party shall secure the payment and performance of all liabilities and obligations now or hereafter owing from the Debtor to the Secured Party of whatever kind or nature, whether or not currently contemplated at the time of this Agreement, whether such obligations be direct or indirect, absolute or contingent or due or to become due . . . (the "Obligations," as defined in Paragraph 2® herein. . .).

(Exh.B ¶ 1(c).)

The definition of "Obligations" states:

> "Obligations" shall mean the Loan and any and all other advances made hereunder . . . and any and all other liabilities and obligations of whatever nature of Debtor to Secured Party, no matter how or when arising and whether under this Agreement . . . or under any other agreements, guarantees, letters of credit . . . instruments or documents, past, present or future, and the amount due on any notes or other obligations of Debtor given to, received by or held by Secured Party . . . for or on account of any of the foregoing, whether, in each case, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising.

(Exh. B ¶ 2®.)

Regardless of whether the 2007 Loan arose out of or was in any way connected to the July 20, 2006 Loan Documents or was entirely separate therefrom, it is clearly within the scope of the future advances clauses of People's security agreements.  People's security interest, therefore, secures the 2007 Loan, as well as the Line of Credit and the Term Loan.  Moreover, the priority of People's security interest is determined from the date of its original UCC-1 filing on July 17, 2006, regardless of the dates on which the advances were actually made.

Under a proper reading of the first-to-file-or-perfect rule of Section

---

[4] The provisions of the Bank Security Agreement are similar.

> 9-322(a)(1) . . . it is abundantly clear that the time when an advance is made plays no role in determining priorities among conflicting security interests .... Thus, a secured party takes subject to *all* advances [past *and future*] secured by a competing security interest having priority under Section 9-322(a)(1).

Conn. Gen. Stat. §42a-9-323 cmt. 3 (emphasis added); see also id. ex. 1.

## V. CONCLUSION

In accordance with the foregoing discussion, the Court concludes that People's security interest in the Debtor's assets has priority, as to all indebtedness of the Debtor to People's, over that of LaGalia. A separate Judgment consistent with this Memorandum of Decision shall issue this same date.

Dated: October 8, 2009                                              BY THE COURT

*[signature]*
Albert S. Dabrowski
Chief United States Bankruptcy Judge